ORIGINAL

FILED
JUN 13 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **JEM TRANSPORT, INC.** | ) | **BID PROTEST** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Fed. Cl. No. 08-428 C** |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff, JEM Transport, Inc. (JEM Transport), as its Complaint against the Defendant, the United States of America, acting by and through the United States Postal Service (the "USPS" or the "Postal Service"), alleges as follows:

**INTRODUCTION**

1. JEM Transport protests the award of a Postal Service mail transportation contract to MLM Trucking Inc. (MLM Trucking). JEM Transport's price was $710,907 (17 percent) lower than MLM's price, under a solicitation in which price factors were "more important" than technical factors. Properly considered, JEM Transport should have received a technical rating as good, or better, than the awardee's rating. It offered an advantageous schedule; its equipment was better than that of the awardee; it possessed superior



{TY035586;1}

capabilities as a supplier, having performed Postal HCR routes for 30 years; and its past performance was at least equal to that of the awardee. Thus, under the evaluation criteria set forth in the solicitation, JEM Transport should have received award of the contract.

2. This is JEM Transport's second protest of this procurement. The Postal Service Ombudsman granted the first protest under its internal disagreement procedure, finding that the contracting officer's award decision was "arbitrary" and "not in accordance with the terms of the solicitation." The Ombudsman sent the matter back to the same contracting officer, who improperly evaluated proposals a second time.

3. On remand, the contracting officer violated an express prohibition of the solicitation, which led to the improper award decision. He used information on USPS Form 7468A to evaluate JEM Transport's price, which the solicitation prohibited. He compounded the error by using this information to find pretextual weaknesses in JEM Transport's pricing. Accordingly, the contracting officer's current award decision is just as "arbitrary" as his first one.

4. In addition, JEM Transport's protest is based on three other, separate grounds: (a) the Postal Service arbitrarily downgraded JEM Transport's proposal by applying evaluation factors that the Postal Service acknowledges were not stated in the Solicitation; (b) the Postal Service treated offerors

unequally, subjecting JEM Transport's proposal to a pretextual and microscopic evaluation while simultaneously applying blinders when evaluating MLM's proposal; and (c) the Postal Service failed to award the contract in accordance with the terms of the solicitation, which stated that price was "more important" than technical factors. Accordingly, the award to MLM Trucking was arbitrary, capricious, and otherwise not in accordance with law, and it must be overturned. Plaintiff is not seeking a preliminary injunction at this time, but does seek expedited resolution of this protest.

## PARTIES

5. Plaintiff, JEM Transport, is an experienced contractor for the Postal Service.

6. The Defendant is the United States, acting by and through the United States Postal Service.

## JURISDICTION AND STANDING

7. This Court has jurisdiction over this bid protest action involving the Postal Service pursuant to 28 U.S.C. § 1491(b). *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1080-84 (Fed. Cir. 2001); *Asia Pacific Airlines v. United States*, 68 Fed. Cl. 8, 16-17 (2005).

8. JEM Transport is an "interested party" for purposes of filing this bid protest in that it was an actual offeror whose economic interest was

adversely affected by the award of the contract to its competitor, MLM Trucking. In the absence of the prejudicial violations of law and other errors described below, JEM would have been awarded the contract for HCR No. 331M8.

## FACTUAL ALLEGATIONS

9. On or about April 24, 2007, the Postal Service issued a solicitation for HCR No. 331M6 (now 331M8) between West Palm Beach and Miami, Florida for the period July 1, 2007 through March 31, 2011. JEM Transport timely submitted a proposal in response to the solicitation, in which it demonstrated that it was uniquely qualified to perform the route.

10. Despite the fact that JEM Transport offered a lower price — by over $1 million during the four-year term of the contract — the Postal Service selected a competitor, Postal Carrier Corporation (PCC), for award. JEM contested the award to the Postal Service Ombudsman under the agency's internal "supplier disagreement" procedure. On November 9, 2007, the Ombudsman upheld JEM Transport's disagreement, holding that "the decision to award HCR 331M6 to PCC was arbitrary and did not clearly represent the best value for the Postal Service." Accordingly, the Supplier Ombudsman directed the Contracting Officer to promptly re-solicit and properly evaluate proposals in accordance with stated evaluation criteria.

11. The Postal Service re-issued the Solicitation on November 16, 2007. The re-issued Solicitation re-designated the route as HCR 331M8 and provided that the period of performance would be from February 2, 2008 through March 31, 2011. The Solicitation required offerors to submit in their proposals (a) an offered price; (b) an acknowledgement and certification of compliance with vehicle requirements; and, if requested, (c) additional financial data to establish capability. The Solicitation stated that any financial data submitted relating to capability "will not form a part of any resulting contract."

12. The Solicitation provided that "Price factors (Section 3.1.2a) will be considered more important than performance evaluation factors." It identified the performance evaluation factors as schedule, equipment, supplier capability, and past performance. Nine offerors submitted proposals in response to the Solicitation.

13. JEM Transport timely submitted its proposal by letter dated December 28, 2007. JEM Transport offered to perform at a price of $1,102,820 per year and advised the Postal Service of the advantages offered by its proposal. Specifically, JEM Transport advised the Postal Service that it:

- Had previous experience operating the Miami–West Palm Beach route and ran it successfully for one year plus the holiday season;
- Had the management team, drivers and equipment currently on hand to immediately start the contract;
- Would add additional tractors consistent with the Solicitation upon being awarded the Contract;



{TY035586;1}

- Uses only its own employees, not owner-operators as some contractors do, and provides workers compensation, and pays all drivers promptly for all hours worked, including late slips and extra trips;
- Has 24 hour road service available, along with three mechanics, three service trucks, and one tow truck;
- Can handle additional schedules and extra trips;
- Is increasing its fleet to include more fuel efficient tractors and more trailers; and
- Would absorb the cost of traveling on the Florida turnpike to avoid delays.

14. JEM Transport again submitted the lowest priced proposal. But instead of seeking to find ways to accept the proposal, the contracting officer sought to find ways to reject it again.

15. By letter dated January 29, 2008, the Contracting Officer notified JEM Transport that he had selected MLM Trucking for award. MLM Trucking's annual rate was $1,332,789 for award, which was about $230,000 higher per year than JEM Transport annual rate, or over $710,000 higher over the life of the Contract. In addition, upon information and belief, MLM Trucking did not meet Solicitation requirements because it: (a) does not own or directly lease the tractors it uses on the Miami–West Palm Beach route, but rather uses some owner–operators; and (b) was unable to convert single-axle tractors to two-axles by contract start date, as required by the Solicitation.

16. JEM Transport immediately requested a debriefing, which the Postal Service provided by letter dated February 4, 2008. In its written

debriefing, the Postal Service maintained that it did not select JEM Transport for the following reasons:

a. Although acknowledging that "there is no requirement for the supplier/offeror to show annual hours in excess of the annual hours estimated by the USPS," the Contracting Officer claimed that JEM Transport understated the amount of contingency hours shown on Line 12 of the USPS Highway Transportation Contract – Cost Worksheet (PS Form 7468A) (the Form 7468A Cost Worksheet) that accompanied JEM Transport's offer. Contingency hours, of course, cannot be understated if they are not required.

b. Although acknowledging that JEM Transport offered to revise its offer upward to reflect a lower fuel efficiency rate than reflected in Line 6 of the Form 7468A Cost Worksheet, the Contracting Officer asserted that "this was a matter that should have been known prior to the submission of JEM Transport's offer." This matter, of course, could easily have been resolved had the Contracting Officer simply accepted JEM Transport's offer to revise its offer, but the Contracting Officer failed even to contact JEM Transport to discuss the revision offer.

c. Although acknowledging, that "there is no requirement that the offerors/suppliers place hours in" line 17 of the Form 7468A Cost Worksheet, the Contracting Officer contended that generally when hours are

placed on that line they should reflect at least the federal minimum wage rate. There is, of course, no such requirement to do so, as salaried supervisory hours are exempt from minimum wage requirements.

d. With respect to equipment, although acknowledging that JEM offered to convert its single-axle tractors to two axles immediately upon award, to meet a requirement of the Solicitation, the Contracting Officer asserted that JEM Transport "may not be able to have the equipment retrofitted by the contract begin term." There was, of course, no indication JEM Transport would be unable to meet the conversion requirement, and the awardee had the same issue.

17. The Contracting Officer informed JEM Transport that, based on the contentions described in Paragraph 16, he was "unable to render an affirmative finding of 'Capability' for **JEM**." (Original bolding.) This reason was pretextual because the cited matters related to price, not capability. This determination and the contentions set forth in Paragraph 16(a) – (c) were directly contrary to the evaluation scheme set forth in the Solicitation, which provided that "[t]he information provided on your ***Form 7468-A will not be used to evaluate the price you have proposed***. This is a competitive, negotiated procurement, and award will be made based on price and other factors (if any) set out in Section 3.1.3 of this document." (Section 3.1.2.A(2)(b), emphasis

added.) The stated purpose of the Form 7468A Cost Worksheet was to establish a base for adjusting compensation during the term of the contract. The Postal Service thus plainly deviated from the terms of the Solicitation in evaluating JEM Transport's proposal.

18. By letter dated February 14, 2008, JEM Transport filed with the Contracting Officer a "Business Disagreement" pursuant to the provisions of 39 C.F.R. 601.107, which the Contracting Officer denied by letter dated February 21, 2008. JEM Transport then submitted a disagreement to the USPS Supplier Disagreement Resolution Official (SDRO) – the new title of the former Postal Service Ombudsman – by letter dated March 3, 2008.[1] The SDRO denied the disagreement by letter dated May 9, 2008, even though he had recently determined in another case that the same solicitation provision precluded the use of information provided on Form 7468A to evaluate price. *See Supplier Disagreement Resolution Case No. SDR08MT-05 (Anthony Veltri)* (attached hereto as Exhibit 1). Although JEM Transport had not expressly raised this

---

[1] Neither of these internal review processes provides for discovery, exchange of documents, fact finding, or outside review of the decisions rendered in them, which in this case were both wrong. The Postal Service SDRO (formerly called Ombudsman) is not a lawyer and is not independent from the Postal Service's procurement office. *See "U.S. Postal Service: Purchasing Changes Seem Promising, but Ombudsman Revisions and Continued Oversight are Needed,"* Government Accountability Office (GAO) Report, GAO-06-190, December 15, 2005.

issue, the SDRO should have considered it in his "independent" review. This bid protest then ensued.

19. The reasons offered by the Contracting Officer for being unable to make a Capability finding for JEM Transport were pretextual and show that the evaluation and award were arbitrary, capricious, and inconsistent with the evaluation criteria stated in the Solicitation. The Contracting Officer acknowledged that two of the primary bases upon which he downgraded JEM Transport — the supposed lack of sufficient contingency hours and the purported lack of explanation for the supervisory labor rate — were not requirements of the Solicitation. Also, under the terms of the Solicitation, the information on the Form 7468A Cost Worksheet regarding contingency hours and supervisory labor was "not [to] be used to evaluate the price" JEM Transport proposed. Accordingly, the evaluation of JEM Transport was based on unstated evaluation factors and was inconsistent with the Solicitation.

20. There was no Solicitation requirement to include any contingency hours, and the Contracting Officer acknowledged that his own estimate of contingency hours was unsupported by any reasonable analysis. Again, this was contrary to the Solicitation's express prohibition against using contingency hour information appearing on the Form 7468 Cost Worksheet to evaluate JEM Transport's price. This rendered the evaluation of JEM arbitrary and capricious.



{TY035586;1}

21. Similarly, there was no rational basis to downgrade JEM Transport for including Supervisory hours, when the Contracting Officer himself acknowledged that there was no requirement to include such hours in the proposal. Also, the Contracting Officer arbitrarily determined that an offeror had to show a minimum wage rate despite any logical necessity to do so for this salaried position. And, again, the Solicitation expressly prohibited the Contracting Officer from evaluating JEM Transport's price based on the Supervisory hours or rates shown on the Form 7468 Cost Worksheet.

22. The Contracting Officer also reached irrational conclusions regarding JEM Transport's offer to increase its bid to address fuel efficiency concerns. There was no stated requirement for offerors to use or meet any particular fuel efficiency figure on this fixed-price Contract. JEM Transport properly determined that it would accept the risk of meeting a higher fuel efficiency. Moreover, if the Postal Service were genuinely concerned about this aspect of JEM Transport's proposal, it should have accepted JEM Transport's offer to revise its price, which would still have been the lowest price. Furthermore, this is another instance of the Contracting Officer evaluating JEM Transport's price based on fuel efficiency hours reflected in Line 6 of the Form 7468A Cost Worksheet, despite the Solicitation's prohibition against doing so. Accordingly, the Postal Service's evaluation of this aspect of JEM Transport's

proposal was based on an unstated evaluation factor and was arbitrary and capricious.

23. The Postal Service's assertions regarding JEM Transport's supposed inability to meet the two-axle requirement further demonstrate that the Postal Service conducted a prejudicial, unequal evaluation. On information and belief, the awardee, MLM Trucking, also had to convert from single-axle to two-axle tractors by the start of performance. Accordingly, by downgrading JEM Transport on this issue, while not similarly downgrading MLM Trucking, the Postal Service improperly treated offerors differently. Accordingly, the Contracting Officer's best value determination was arbitrary, capricious and otherwise not in accordance with law.

24. The Contracting Officer additionally failed to give proper weight to price factors. Instead of giving price factors primary importance, as required by the Solicitation, the Contracting Officer evaluated proposals as if price were of lesser importance than performance evaluation factors. As the Contracting Officer explained, he ranked offers from low to high price, and then determined their technical merit. But the Contracting Officer's conclusions on technical merit subsumed any considerations of price. He also failed to make any price–technical trade–off analysis. Accordingly, his award decision was contrary to the terms of the Solicitation.

25. Finally, because of his deviations from the stated evaluation criteria, unequal treatment of offerors, and failure to adequately weight price, the Contracting Officer failed to make a best value determination in accordance with the terms of the Solicitation.

26. The Postal Service's evaluation of JEM Transport was arbitrary and capricious in that it was based on factors that the Postal Service acknowledged were not stated in the Solicitation. It also was arbitrary and capricious because the Contracting improperly evaluated JEM Transport's price based on information shown on the Form 7468A Cost Worksheet, contrary to the express prohibition in the Solicitation. It was further arbitrary and capricious because the Postal Service treated JEM Transport and MLM Trucking differently, failed to give proper weight to price, and failed to make a best value determination consistent with the Solicitation.

27. JEM Transport was severely prejudiced by the Postal Service's arbitrary and unequal evaluation and award. Had the Postal Service fairly evaluated JEM Transport consistent with the evaluation factors stated in the Solicitation on an equal basis with other offerors, it would have determined that JEM Transport's proposal represented the best value to the Postal Service as the technically equal or superior/lowest price offeror. A proper, fair evaluation,

conducted in accordance with the Solicitation would have resulted in the selection of JEM Transport's proposal for award.

28. Accordingly, the Postal Service's award to MLM Trucking was arbitrary, capricious and otherwise not in accordance with law, thereby entitling this court to enjoin the contract consistent with 28 USC § 1491(b)(2).

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff, JEM Transport respectfully requests that this Court grant judgment in its favor and grant Plaintiff the following relief:

1. A declaration that the contract was awarded to MLM Trucking contrary to applicable law and the Solicitation;
2. A permanent injunction ordering Defendant to suspend performance of the MLM Trucking contract within 60 days after the Court enters judgment;
3. A permanent injunction ordering Defendant to terminate the MLM Trucking contract within 60 days after the Court enters judgment;
4. An injunction directing the Postal Service to award the Contract in accordance with the evaluation criteria stated in the Solicitation;
5. An award of attorneys fees and expenses to JEM Transport; and
6. Such other and further relief as the Court may deem just and proper.

Dated: June 13, 2008

Respectfully submitted,

C.P. Goddard Jr.
Claude P. Goddard, Jr.
**AKERMAN, SENTERFITT, WICKWIRE GAVIN**
8100 Boone Blvd., Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax

***Attorney of Record for JEM Transport, Inc.***

Of Counsel:
David P. Hendel
**AKERMAN SENTERFITT WICKWIRE GAVIN**
8100 Boone Blvd., Ste. 700
Vienna, Virginia 22182
(703) 790-8750
(703) 448-1767 (Fax)