**REDACTED VERSION**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | |
|---|---|
| **JEM TRANSPORT, INC.,** | |
| **Plaintiff,** | **No. 08-428C** |
| | **(Judge George W. Miller)** |
| **v.** | |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

# PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

**Dated: July 16, 2008**

Claude P. Goddard, Jr., Esq.
AKERMAN SENTERFITT WICKWIRE GAVIN
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182
(703) 790-8750
Counsel for Plaintiff

# TABLE OF CONTENTS


INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 3
- The Original Solicitation .......... 3
- The Current Solicitation .......... 4
- Proposal Requirements .......... 4
- Evaluation Factors for Award .......... 6
- JEM Transport's Offer .......... 6
- MLM Trucking's Offer .......... 8
- Requests for Additional Information .......... 9
- JEM Transport's Response to the Contracting Officer .......... 10
- The Contracting Officer's "Best Value" Determination .......... 12
- The Contracting Officer's Evaluation of JEM Transport .......... 14
- Debriefing Information .......... 16

STANDARD OF REVIEW .......... 17

ARGUMENT .......... 18

I. The Postal Service Conducted an Unequal Evaluation .......... 19
- A. Unequal Evaluation of Contingency Hours .......... 20
- B. Unequal Evaluation of Supplier's Costs (Line 17) .......... 22
- C. Unequal Application of Equipment Requirements .......... 23
- D. Unequal Standards of Supplier Capability .......... 24
- E. Unequal Application of the "In the Best Interests of the Postal Service" Standard .......... 26

II. The Postal Service Deviated From the Evaluation Factors in the RFP .......... 27
- A. Contrary to the Solicitation, the Postal Service Used the Cost Worksheet to Evaluate Price .......... 28
- B. The Postal Service Failed to Give Meaningful Consideration to Price .......... 29

III. The Postal Service Irrationally Evaluated JEM Transport's Supplier's Wages .......... 30

IV. The Court Should Grant Injunctive Relief .......... 30

V. The Appropriate Relief is Re-Evaluation of Existing Proposals, Not Throwing Out Proposals and Re-Soliciting .......... 31

CONCLUSION .......... 34

# TABLE OF AUTHORITIES

## CASES

*Banknote Corp. of America v. United States*, 365 F.3d 1345 (Fed Cir. 2004) .............. 17, 20

*Bannum, Inc. v. United States*, 404 F.3d 1346 (Fed. Cir. 2005).................................. 17

*Chapman Law Firm, et al. v. United States*, 490 F.3d 934 (Fed. Cir. 2007)................ 33

*Dismas Charities, Inc. v. United States*, 61 Fed. Cl. 191 (2004).................................. 17, 18

*E.W. Bliss Co. v. United States*, 77 F.3d 445 (Fed. Cir. 1996).................................... 27

*Emerald Coast Finest Produce Co. v. United States*, 75 Fed. Cl. 549 (2007).............. 32

*Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350 (2004)................. 31, 32, 33

*Griffy's Landscape Maintenance LLC v. United States*, 46 Fed. Cl. 257 (2000)........... 31, 32

*HWA, Inc. v. United States*, 78 Fed. Cl. 685 (2007)..................................................... 17, 27

*Heritage of America, LLC v. United States*, 77 Fed. Cl. 66 (2007).............................. 30, 31

*Hunt Bldg. Co. v. United States*, 61 Fed. Cl. 243 (2004)............................................. 19, 20

*Impresa Construzioni Geom. Demonico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir. 2001)........................................................................................ 17

*Isometrics, Inc. v. United States*, 5 Cl. Ct. 420 (1984) ................................................ 20

*PGBA v. United States*, 389 F.3d 1219 (Fed. Cir. 2004).............................................. 30

## ADMINISTRATIVE DECISIONS

*Veltri, Inc.*, Supplier Disagreement Resolution Case No. SDRO08MT-05, dated March 31, 2008 ........................................................................... 27, 28

## RULES AND REGULATIONS

RCFC 52.1 ......................................................................................................... 17

**STATUTES**

Administrative Disputes Resolution Act (ADRA), 28 U.S.C. § 1491(b) ................. 17

Postal Accountability and Enhancement Act (PAEA), P.L. 109-435 § 1004................ 20

29 CFR §§ 541 Subparts 100 and 200 .......................................................................... 30

5 U.S.C. § 706(2)(A)........................................................................................................ 17

29 U.S.C. § 213(a) ........................................................................................................... 30

41 U.S.C. § 357(b) ........................................................................................................... 30

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | | |
|---|---|---|
| **JEM TRANSPORT, INC.** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 08-428C** |
| | ) | **(Judge George W. Miller)** |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION**
**FOR**
**JUDGMENT ON THE ADMINISTRATIVE RECORD**

Plaintiff, JEM Transport, Inc. (JEM Transport), respectfully moves for judgment on the administrative record pursuant to Rule 52.1 of the Rules of the Court of Federal Claims (RCFC). In support of its motion, Plaintiff shows the following:

**INTRODUCTION**

JEM Transport protests the award of a Postal Service mail transportation contract to MLM Trucking Inc. (MLM Trucking). JEM Transport submitted a fully technically compliant proposal [redacted] under a solicitation in which price factors were "more important" than technical factors. Properly considered under the evaluation criteria set forth in the solicitation, JEM Transport should have received award of the contract.

The Contracting Officer, however, committed a series of prejudicial errors that led to the improper award decision. First, he conducted an unequal evaluation when evaluating:

(1) the requirement for contingency hours; (2) the amount of contingency amounts reflected in supplier's wages; (3) compliance with mandatory equipment requirements; (4) the financial and technical resources of offerors; and (5) the best interests of the Postal Service in accepting proposal revisions. In each instance, JEM offered an objectively more favorable proposal: [redacted] Yet the Contracting Officer applied one standard to JEM Transport to downgrade it in each of these areas and a different one to MLM Trucking to favor it in each instance.

Next, the Contracting Officer deviated from the evaluation scheme set forth in the Solicitation. [redacted]. He further failed to give meaningful consideration to price, contrary to the Solicitation's express statement that price was more important than technical performance factors. Finally, he improperly downgraded JEM Transport [redacted]

In the absence of these errors, JEM properly would have been awarded the contract. Accordingly, this bid protest should be granted.

## FACTUAL BACKGROUND

### THE ORIGINAL SOLICITATION

On April 24, 2007, the Postal Service issued Solicitation No. 300-539-07, for highway contract route (HCR) No. 331M6 between the West Palm Beach and Miami, Florida Processing & Distribution Centers (P&DCs) for the period July 1, 2007 through March 31, 2011. Administrative Record (AR) 938. JEM Transport timely submitted a proposal that [redacted] for the four-year term of the contract. AR 919, 1081-1082 & 1086. The Contracting Officer, however, selected [redacted], Postal Carrier Corporation (PCC), for award after a mere four minutes of consideration. See AR 919 [redacted]. The Contracting Officer purported to justify his rejection of JEM Transport on the basis that he made a "determination of Non Responsibility (Non-Capability) for this offeror." AR 984.

JEM contested the award to the Postal Service Ombudsman under the agency's internal "supplier disagreement" procedure. AR 1110-1115. On November 9, 2007, the Ombudsman upheld JEM Transport's disagreement, holding that "the decision to award HCR 331M6 to PCC was arbitrary and did not clearly represent the best value for the Postal Service." AR 924. The Ombudsman determined that the Contracting Officer improperly considered past performance more important than price. AR 925. Accordingly, the Supplier Ombudsman directed the Contracting Officer to promptly re-solicit and properly evaluate proposals in accordance with stated evaluation criteria. AR 926.

**THE CURRENT SOLICITATION**

The Postal Service re-issued the solicitation, now designated Solicitation No. 300-46-08 (the Solicitation), on November 30, 2007.[1] AR 28 & 33. The Solicitation re-designated the transportation route between the Miami and West Palm Beach P&DCs as HCR 331M8 and specified a contract term running from February 2, 2008 through March 31, 2011.[2] AR 28 & 33. The closing date for proposals was 3:00 pm, Central Time, January 2, 2008. AR 33.

**PROPOSAL REQUIREMENTS**

Offerors were required to submit their proposals on PS Form 7505 (Transportation Services Proposal & Contract for Regular Service) and to complete PS Form 7468A (Highway Transportation Contract – Cost Worksheet) (the Cost Worksheet). AR 33 & 126-127. With respect to the Cost Worksheet, the Solicitation expressly stated that:

> The information provided on your ***Form 7468-A will not be used to evaluate the price you have proposed***. This is a competitive, negotiated procurement, and award will be made based on price and other factors (if any) set out in Section 3.1.3 of this document. However, the information provided on the Form 7468-A will establish the base from which the rates of compensation may be adjusted during the term of any contract. Failure to submit a satisfactorily completed Form 7468-A may prevent such adjustments.

AR 126 (emphasis added).

Offerors were also required to submit (a) an acknowledgement and certification of compliance with vehicle requirements; and, if requested, (b) additional financial data to

[1] The Contracting Officer did not notify JEM Transport of the issuance of the Solicitation or provide a copy of it until December 13, 2007, which action the Ombudsman characterized as "irresponsible." AR 1646.

[2] Solicitation No. 300-46-08 otherwise was substantially the same as Solicitation No. 300-539-07, except as noted below in footnotes 3 and 4.

establish capability. AR 127. The Solicitation stated that any financial data submitted relating to capability "will not form a part of any resulting contract." AR 127. Offerors were also required to submit a Pre-Award Questionnaire and Assets and Liabilities Statement. AR 39-41.

Offerors were required to propose a "per annum" rate and were cautioned to "include all elements of cost the supplier expects to incur in performing this service." AR 33. The Contracting Officer advised offerors that "[o]nce the contract has been awarded, no adjustments to the contract rate will be made." AR 30. The contract was to be awarded on a "fixed rate" or "fixed price" price basis. AR 31, 107 & 124. Fuel costs, however, were to be reimbursed under the Postal Service's Fuel Management Program, under which suppliers either use a Postal Service-provided fuel transaction card or receive reimbursements at a fuel rate baseline established at contract inception and adjusted periodically thereafter. AR 31 & 76.

The Solicitation set out a detailed schedule for the route (AR 47-55) and provided estimates of the annual schedule miles (683,139.9) and hours (30,288) (AR 52).[3] It also cautioned in pertinent part as follows:

> * The estimated annual hours are approximately the number of hours needed to operate the trips as they are shown in the schedule. Also included in the total estimated annual hours are the number of hours needed for dock sortation, loading and unloading. Prior to submitting a proposal, the supplier must determine the actual hours.
>
> * * *

[3] The estimated annual miles (681,574.5) were slightly more in Solicitation No. 300-539-07, but the estimated annual hours (30,288) were the same. AR 944.

> SPECIAL NOTE: Any additional hours or miles which may result from the supplier's unique operations should be included in the proposal price. The miles and hours shown in this section are the estimated minimum miles and hours necessary to operate the trips as shown and do not include washup time, vehicle inspection, etc.

AR 52. See also AR 125. There was, however, no requirement for offerors to propose any miles or hours beyond the stated estimated amounts. See AR 52.

The Solicitation required that offerors supply a minimum of 12 Two Axle (T/A) Tractors (Single Drive) and fourteen 53 Foot Tandem Axle (T/A) Trailers.[4] AR 57. The Solicitation further provided that "[w]hen the supplier submits a proposal to this solicitation, it is certifying that it will provide the equipment as specified in the statement of work and schedule provided in the solicitation." AR 123.

**<u>EVALUATION FACTORS FOR AWARD</u>**

The Solicitation stated that "[t]he Postal Service will award a contract to the offeror whose offer is deemed to offer the Postal Service the best value, price, and other factors as specified." AR 127. The "other factors" specified were characterized as "performance evaluation factors" and identified as schedule, equipment, supplier capability, and past performance. AR 127. The Solicitation provided that "Price factors (Section 3.1.2a) will be considered more important than performance evaluation factors." AR 127.

**<u>JEM TRANSPORT'S OFFER</u>**

JEM timely submitted a fully compliant proposal on December 28, 2007, and offered [redacted] price, [redacted]. AR 26, 163-186.

[4] Solicitation No. 300-539-07 called for seven 45 foot tandem axle trailers and seven 53 foot tandem axle trailers—instead of fourteen 53 foot trailers as required by Solicitation No. 300-46-08. See AR 949.

As required by the Solicitation, JEM Transport submitted a Form 7468A Cost Worksheet. AR 165. In relevant part, the Cost Worksheet provided space for offerors to calculate their (1) anticipated fuel usage in total gallons on Line 6; (2) anticipated tractor driver hours, wage rate, and total wages on Line 12; and (3) the supplier's wages (hours, rate, and total wages) for personal operation of the route, including the supplier's supervision (supplier's wages) on Line 17. AR 35-36, 167-168. The Contracting Officer has acknowledged that offerors are not required to place any figures on Lines 12 or 17. AR 489-490.

JEM Transport's Cost Worksheet showed the following information:

| | | | |
|---|---|---|---|
| Line 6 (Fuel) | [redacted] Gallons[5] | | |
| Line 12 (Drivers' Wages | [redacted] Hours | $17.58/Hour[6] | $[redacted] |
| Line 17 (Supplier's Wages) | [redacted] Hours | $[redacted]/Hour | $[redacted] |

[AR 165.]

JEM Transport's proposal also showed that JEM Transport had performed a number of Postal HCR routes in the past five years. AR 169. JEM Transport also listed the approximately [redacted] tractors it owned. AR 175-176. It proposed to use these assets to perform the contract, stating that [redacted] AR 169. It also showed that JEM Transport had assets of [redacted]. AR 170.

[5] This equates to [redacted] miles per gallon (MPG) (683,139.9 miles/[redacted] gallons equals [redacted] MPG).

[6] $17.58 is the hourly wage specified for tractor drivers in the applicable wage determination. See AR 69. [redacted]

**MLM TRUCKING'S OFFER**

Although the bid closing date was January 2, 2008, MLM Trucking did not submit its bid until January 7, 2008. AR 874. The Contracting Officer accepted the late offer, however, based on a determination that it was in the best interests of the Postal Service to do so. AR 624. MLM Trucking proposed a price of $1,332,786. AR 246. In relevant part, MLM Trucking's Cost Worksheet (AR 249)[7] showed the following information:

| | | | |
|---|---|---|---|
| Line 6 (Fuel) | [redacted] Gallons[8] | | |
| Line 12 (Drivers' Wages | [redacted] Hours | $17.58/Hour | $[redacted] |
| Line 17 (Supplier's Wages) | | | $[redacted][9] |

[AR 249.]

MLM Trucking's proposal also showed it had experience carrying mail. AR 252. MLM Trucking [redacted] equipment it proposed to use on the route, stating [redacted] AR 252. It also showed that MLM Trucking had assets of [redacted]. AR 253. MLM Trucking's offer also showed that it owned [redacted] tractors.[10] AR 254.

[7] [redacted]

[8] This equated to [redacted] MPG.

[9] [redacted]. AR 248.

[10] [redacted] See AR 294-299.

**<u>REQUESTS FOR ADDITIONAL INFORMATION</u>**

By letter dated January 17, 2008, the Contracting Officer requested additional information from JEM Transport. AR 511. Among other things, the Contracting Officer asked JEM Transport to address the following issues:

a. [redacted] AR 511.

b. [redacted] AR 512.

c. [redacted]

[redacted] AR 512.

By letter dated January 15, 2008, the Contracting Officer also requested additional information from MLM Trucking. AR 584. The Contracting Officer [redacted] See AR 555-558, 584-587. In addition, the Contracting Officer [redacted] See AR 584-587.

**<u>JEM TRANSPORT'S RESPONSE TO THE CONTRACTING OFFICER.</u>**

JEM Transport responded to the request for additional information by letter dated January 22, 2008, stating in pertinent part:

a. JEM Transport has [redacted] AR 517.

b. [redacted], JEM Transport stated that, [redacted] AR 631.

c. [redacted] AR 518.

In addition, [redacted]

MLM Trucking also responded to the Contracting Officer's request for information. MLM Trucking [redacted]

[redacted]

**THE CONTRACTING OFFICER'S "BEST VALUE" DETERMINATION**

Nine offerors submitted offers in response to the RFP. AR 26. JEM Transport's proposed price of [redacted]. AR 26. MLM Trucking submitted the [redacted] price of $1,332,786.00 per year, [redacted][11] AR 26. [redacted] By letter dated January 29, 2008, the Contracting Officer notified JEM Transport that he had selected MLM Trucking for award.

In his "best value" determination, the Contracting Officer found that MLM Trucking was acceptable in the four non-cost factors (schedule, equipment, supplier capability, and past performance). AR 286. In addition, the Contracting Officer determined that he should render an affirmative finding of "Capability" for MLM Trucking, which he described as a "requirement that the offeror must have, or have the ability to obtain, resources (financial, technical, etc.) adequate to perform the work." AR 286. The Contracting Officer, however,

[11] JEM Transport's price was [redacted]. AR 431. MLM Trucking's price was [redacted]. AR 432.

did not factor price into his best value determination. See AR 286-289 (no analysis or discussion of price).

The Contracting Officer also waived the Solicitation requirement that MLM Trucking must satisfy the requirement for twin-axle tractors and trailers by the contract start date, stating as follows:

> [redacted]

AR 287.[12] The Administrative Record does not disclose when MLM Trucking actually met the requirement for 12 tractors, [redacted]. AR 1688.

The Contracting Officer determined that MLM Trucking's [redacted][13]

---

[12] [redacted]

[13] [redacted]

[redacted]

[redacted]

[redacted]

**<u>THE CONTRACTING OFFICER'S EVALUATION OF JEM TRANSPORT</u>**

In contrast to his treatment of MLM Trucking, the Contracting Officer made the following determinations regarding JEM Transport:

[redacted]

---

[redacted]

AR 336. The Contracting Officer also concluded that [redacted]

The Contracting Officer concluded that JEM Transport's offer [redacted]

In evaluating the performance evaluation factors, the Contracting Officer made the following determinations:

[redacted]

<u>**DEBRIEFING INFORMATION**</u>

JEM Transport immediately requested a debriefing, which the Postal Service provided by letter dated February 4, 2008. AR 489-491. In its written debriefing, the Postal Service maintained that it did not select JEM Transport for the following reasons:

a. [redacted] AR 489-491.

b. [redacted] AR 490.

c. [redacted] AR 490.

d. [redacted] AR 491.

The Contracting Officer informed JEM Transport that, [redacted]

## STANDARD OF REVIEW

This Court has jurisdiction over this bid protest action pursuant to the Administrative Disputes Resolution Act (ADRA). 28 U.S.C. § 1491(b). The ADRA specifically made applicable the standards of review set forth in the Administrative Procedures Act (APA) for the Court's review of an agency's decisions in bid protest actions. Id.; Banknote Corp. of America v. United States, 365 F.3d 1345, (Fed. Cir. 2004). Under the APA standard of review, the Court has the power to overturn agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, regulation or procurement procedure. 5 U.S.C. § 706(2)(A); HWA, Inc. v. United States, 78 Fed. Cl. 685, 695-696 (2007). In other words, "a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Impresa Construzioni Geom. Demonico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). A protester must also establish prejudice by showing that there was a "substantial chance" it would have received the contract award absent the challenged agency action. Bannum, Inc. v. United States, 404 F.3d 1346, 1353 (Fed. Cir. 2005).

Plaintiff JEM Transport has moved for judgment on the administrative record pursuant to RCFC 52.1. The focal point for judicial review of such motions is the administrative record in existence at the time of award—that is, the materials and files that were before the agency at the time the decision was made. Dismas Charities, Inc. v. United States, 61 Fed. Cl. 191, 198 (2004). A plaintiff is entitled to judgment on the administrative record in a bid protest when, given all the disputed and undisputed facts, it has met its burden of proof that an

award is arbitrary, capricious, or violates to prejudicial effect an applicable procurement regulation or procedure. Id.

## ARGUMENT

The reasons offered by the Contracting Officer for being unable to make a Capability finding for JEM Transport were pretextual and show that the evaluation and award were arbitrary in three distinct ways. First, the Contracting Officer conducted a manifestly unequal evaluation by downgrading JEM Transport based on one standard while using a different standard to boost MLM Trucking's evaluation in the areas of contingency hours, supplier wages, equipment compliance, and supplier capability. JEM Transport was objectively better in all those areas. The Contracting Officer also applied an inconsistent standard defining the best interest of the Postal Service when he accepted a late proposal by MLM Trucking but rejected the proposal revision JEM Transport offered.

Second, the evaluation of JEM Transport was based on unstated evaluation factors and was inconsistent with the Solicitation. The Contracting Officer acknowledged that two of the primary bases upon which he downgraded JEM Transport—[redacted]—were not requirements of the Solicitation. Also, the Contracting Officer used JEM Transport's Cost Worksheet to evaluate JEM Transport's price contrary to the Solicitation's express provision that information on the Cost Worksheet was "not [to] be used to evaluate the price" JEM Transport proposed. The Contracting Officer additionally failed to give proper weight to price factors. Instead of giving price factors primary importance, as required by the Solicitation, the Contracting Officer evaluated proposals as if price were of lesser importance than performance evaluation factors.

Third, the Contracting Officer reached irrational conclusions regarding JEM Transport's offer [redacted]

Because of his unequal treatment of offerors, deviations from the stated evaluation criteria, and irrational rejection of JEM Transport's proposal revision, the Contracting Officer failed to make a best value determination in accordance with the terms of the Solicitation. JEM Transport was severely prejudiced by the Postal Service's arbitrary and unequal evaluation and award. Had the Postal Service fairly evaluated JEM Transport consistent with the evaluation factors stated in the Solicitation on an equal basis with other offerors, JEM Transport's lowest-price proposal would have been selected for contract award.

## I. THE POSTAL SERVICE CONDUCTED AN UNEQUAL EVALUATION.

The USPS subjected JEM Transport's proposal to a pretextual and microscopic evaluation that was designed to favor MLM Trucking. While the Postal Service overlooked errors in MLM's proposal, it downgraded JEM Transport for those same errors. Such unequal treatment violates the USPS Purchasing Manual and fundamental tenets of government contract law.

An offeror's submission of a responsive offer to a competitive solicitation creates an implied contract of fair dealing between the offeror and the contracting agency. Hunt Bldg.

Co. v. United States, 61 Fed. Cl. 243, 273 (2004). This implied contract of fair dealing requires that contracting agencies "must treat all offerors equally, evaluating proposals evenhandedly against common requirements and evaluation criteria." Banknote Corp. of America v. United States, 56 Fed. Cl. 377, 383 (2003), aff'd, 365 F.3d 1345 (Fed. Cir. 2004). The obligation to treat offerors fairly and equally also extends to the Postal Service under separate statutory authority and as a matter of internal Postal Service policy. See Postal Accountability and Enhancement Act (PAEA), P.L. 109-435, § 1004 ("it is the sense of Congress that the Postal Service should . . . ensure the fair and consistent treatment of suppliers"); Postal Service Supplying Practices and Principles (SPP), page 8 ("the Postal Service is committed to treating its suppliers in a fair, objective, and business-like manner") & pages 4-5 (to same effect).

It is quintessential unequal treatment when an agency fails to follow the requirements of its own solicitation and selects an offeror based on criteria different than those imposed on other offerors. Hunt Bldg. Co., 61 Fed. Cl. at 273. A contracting agency simply cannot give one offeror the "benefit of the doubt" while simultaneously holding another to a stricter standard of compliance. Isometrics, Inc. v. United States, 5 Cl. Ct. 420, 425 (1984). As explained below, the Postal Service here performed the same sort of unequal evaluation that this Court has considered to be arbitrary in other cases.

**A. UNEQUAL EVALUATION OF CONTINGENCY HOURS**

The starkest example of unequal treatment of offerors is provided by the Contracting Officer's evaluation of contingency hours shown on Line 12 of the Cost Worksheet. As noted above, the Solicitation set out an estimate of 30,288 hours as the minimum hours necessary to perform all the trips required. [redacted]

[redacted]

Despite these facts, however, the Contracting Officer [redacted]

The pretextual nature of the Contracting Officer's reasoning is belied by the Contracting Officer's use of a different, contradictory rationale in evaluating MLM Trucking's proposal. [redacted]

These facts show unequal treatment on their face. The Contracting Officer used one standard for JEM Transport—[redacted]—but a different one for MLM Trucking—[redacted].

**B. Unequal Evaluation of Supplier's Costs (Line 17)**

The Contracting Officer's analysis of the [redacted] contingency amounts on other lines also rested on a differing treatment of offerors. [redacted]

Here, again, the Contracting Officer applied a different, more lenient standard to MLM Trucking. [redacted]

[redacted] Again, these facts demonstrate prejudicially unequal treatment on their face.

**C. UNEQUAL APPLICATION OF EQUIPMENT REQUIREMENTS.**

The Contracting Officer further treated offerors differently when he waived the Solicitation requirement for equipment compliance for MLM Trucking but required strict compliance from JEM Transport as to those same requirements.

The Contracting Officer [redacted] The Contracting Officer stated with respect to MLM Trucking that [redacted] AR 287.

This was in keeping with the [redacted]

That [redacted] apparently applied to anyone but JEM Transport. Although he acknowledged that JEM Transport offered [redacted]

[redacted] In other words, the Contracting Officer extended his [redacted] Such unequal treatment plainly is arbitrary and capricious and warrants injunctive relief overturning the contract award.

**D. <u>UNEQUAL STANDARDS OF SUPPLIER CAPABILITY.</u>**

The Contracting Officer next used materially different standards of determining "Supplier Capability" in evaluating the proposals of JEM Transport and MLM Trucking. The Contracting Officer determined that JEM Transport [redacted]

In contrast, although the Contracting Officer paid lip service to this same standard in his best value memorandum—[redacted]—the Administrative Record shows he actually used a different standard in evaluating MLM Trucking under this factor. He did not actually examine whether MLM Tucking [redacted] Again, this demonstrates the Contracting Officer gave the benefit of doubt to MLM Trucking while using exacting standards for JEM Transport.

The Administrative Record discloses that the Contracting Officer used a checklist that set out the elements of his Supplier Capability determination for MLM Trucking. AR 1692. This was the same checklist he used in the first award (see AR 1083), [redacted] AR 1692. The checklist shows that the Contracting Officer considered the following information to determine MLM Trucking's Supplier Capability:

[redacted]

See AR 1692. Thus, the Contracting Officer looked at the [redacted] AR 1692-1693.

In contrast, the Contracting Officer used a materially different standard when evaluating JEM Transport's offer. In this instance, the Contracting Officer focused almost exclusively on [redacted] AR 332-334. In doing so, the Contracting Officer deviated from the standard of Supplier Capability he applied to MLM Trucking. In other words, he treated the two offerors differently.

This was prejudicial error because, had the Contracting Officer applied the same standard of Supplier Capability to JEM Transport, he would have found JEM Transport to have a better Supplier Capability rating than MLM Trucking. [redacted] Under these facts, no rational person using the same standard could find that MLM Trucking met the Supplier Capability factor, while simultaneously finding JEM Transport did not. The Contracting Officer's conclusions accordingly resulted from a prejudicially unequal evaluation of Supplier Capability.

**E. <u>UNEQUAL APPLICATION OF THE "IN THE BEST INTERESTS OF THE POSTAL SERVICE" STANDARD.</u>**

Finally, the Contracting Officer applied different standards in accepting a late proposal by MLM Trucking, while rejecting out of hand JEM Transport's offer to revise its proposal [redacted]

[redacted][14] The Contracting Officer acknowledged that JEM Transport offered this revision but rejected it out of hand. AR 333, 490. This was error because the Solicitation placed primary importance on price, and the acceptance of JEM Transport's revised price [redacted] would have resulted in a lower overall cost to the Postal Service.

It also amounted to unequal treatment of offerors. The Contracting Officer accepted a late bid by MLM Trucking on the stated basis that its acceptance was in the best interests of the Postal Service (AR 624, 874), even though MLM Trucking's price was [redacted] (AR 432). An equal application of the "best interests of the Postal Service" standard should have led to the acceptance of MLM Trucking's offered price revision [redacted] By using the "best interests of the Postal Service" standard to favor MLM Trucking and to disfavor JEM Transport, the Contracting Officer acted arbitrarily, and his award decision must be struck down.[15]

## II. THE POSTAL SERVICE DEVIATED FROM THE EVALUATION FACTORS IN THE RFP.

This Court may overturn an agency award decision when the agency evaluates proposals inconsistently with the evaluation criteria stated in the solicitation. E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996); HWA, Inc., 78 Fed. Cl. at 701, 704. The

---

[14] [redacted] AR 432.

[15] The Contracting Officer's evaluation of fuel information from the Cost Worksheet also violated the Solicitation's prohibition on using such information to evaluate price. See Veltri, Inc., Supplier Disagreement Resolution Case No. SDRO08MT-05, dated March 31, 2008 (Exhibit 1 to the Complaint).

award here must be overturned because the Postal Service prejudicially deviated from the evaluation factors stated in the Solicitation.

### A. CONTRARY TO THE SOLICITATION, THE POSTAL SERVICE USED THE COST WORKSHEET TO EVALUATE PRICE.

As explained above, the Solicitation clearly stated that "Form 7468-A will not be used to evaluate the price you have proposed." AR 126. Instead, the sole stated purpose of the Cost Worksheet was to establish the baseline for certain costs, such as fuel, that would be adjusted during the term of the contract. AR 126. The Postal Service Ombudsman has held that the same solicitation provision precludes a contracting officer from using the Cost Worksheet to evaluate price. See Veltri, supra.

Despite this clear Solicitation provision and interpretation, the Administrative Record shows that the Contracting Officer used the Cost Worksheet to evaluate the elements of JEM Transport's price. [redacted]

This was prejudicial error. This was a competitive procurement based on a fixed price and other factors stated in the Solicitation. AR 126. JEM Transport was free to bid [redacted]

[redacted], and the Solicitation provided no basis to reject its offer if it did so.[16] This is particularly true where, as here, [redacted].

### B. The Postal Service Failed to Give Meaningful Consideration To Price.

Although the Solicitation provided that price was more important than performance evaluation factors, the Contracting Officer failed to give meaningful consideration to price in making his best value determination. JEM Transport offered [redacted]—almost [redacted] The Administrative Record, however, fails to show that the Contracting Officer gave any consideration to [redacted]

In fact, the Contracting Officer irrationally rejected JEM Transport's offer because [redacted] See AR 336 [redacted] Because this was a competitive procurement in which price was the most important factor, the Contracting Officer was required by the Solicitation to consider a low price favorably, not negatively. Accordingly, the Contracting Officer deviated from the Solicitation when he [redacted]. This was prejudicial error, and the Court should sustain the protest on this basis.

---

16 [redacted]

## III. THE POSTAL SERVICE IRRATIONALLY EVALUATED JEM TRANSPORT'S SUPPLIER'S WAGES.

[redacted]

## IV. THE COURT SHOULD GRANT INJUNCTIVE RELIEF.

This Court weighs four factors in determining whether injunctive relief should be granted: (1) whether the plaintiff has prevailed on the merits; (2) whether the plaintiff will suffer irreparable injury if the injunctive relief is not granted; (3) whether the threatened injury to the plaintiff outweighs the harm to the defendant and other third parties; and (4) whether granting the relief is in the public interest. Heritage of America, LLC v. United States, 77 Fed. Cl. 66 (2007), citing PGBA v. United States, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). These factors all militate in favor of granting injunctive relief in this case.

As shown above, JEM Transport should prevail on the merits. The Administrative Record demonstrates that the Postal Service conducted a prejudicially unequal and arbitrary evaluation in which it materially deviated from the evaluation factors stated in the Solicitation. JEM Transport is entitled to judgment on the Administrative Record. Where, as here, the plaintiff establishes success on the merits, the balance tips significantly in its favor in weighing the need for injunctive relief.

The other three factors also favor Plaintiff. The improper denial of a federal contract constitutes irreparable injury because the plaintiff has no adequate remedy at law. Heritage of America, 77 Fed. Cl. at 79. The irreparable harm resulting from the improper denial of a contract also outweighs any potential harm to the Postal Service and MLM Trucking. Plaintiff has carefully crafted its request for injunctive relief to avoid disruption of mail transportation, and MLM Trucking has no legitimate interest in continuing to perform a contract that should have been awarded to JEM Transport under the terms of the Solicitation. Finally, it is well-established that there is an overriding public interest in preserving the integrity of the federal procurement process by requiring government officials to follow procurement laws, regulations and procedures. Great Lakes Dredge & Dock Co. v. United States, 60 Fed. Cl. 350, 369 (2004). Accordingly, the Court should determine that injunctive relief is appropriate here.

## V. THE APPROPRIATE RELIEF IS RE-EVALUATION OF EXISTING PROPOSALS, NOT THROWING OUT PROPOSALS AND RE-SOLICITING.

The appropriate injunctive relief is to require the Postal Service to re-evaluate existing proposals fairly, objectively, and in accordance with the terms of the Solicitation. There is no reason to throw out proposals and perform yet a third re-solicitation. The procurement errors that occurred are all remedied by a re-evaluation—assuming it is performed in a fair and objective manner and in accordance with the Solicitation's terms. The drastic action of a resolicitation does not remedy the harm that occurred, and introduces new hardships, such as further delay, the preparation of yet another proposal, and a brand new evaluation of offers received in response to the new solicitation.

The remedy of remand to the contracting officer to re-evaluate proposals is a commonly used remedy in like circumstances. For example, in Griffy's Landscape

Maintenance LLC v. United States, 46 Fed. Cl. 257 (2000), the Court found that the agency committed procurement error by failing to ask the protester for missing insurance contact information. Instead of asking the offeror for the missing contact information, the agency awarded zero points for this factor and severely downgraded the protester's proposal. The Court found this was arbitrary and capricious behavior. The Court's remedy was to "vacate the award and direct the Army to re-evaluate Griffy's proposal consistent with this opinion, and make award." Id. at 6. This relief was ordered 9 months after the solicitation had been issued. The Court did not order re-solicitation.

Similarly, in Emerald Coast Finest Produce Co. v. United States, 75 Fed. Cl. 549 (2007), the Court ordered a re-evaluation of proposals because the agency's evaluation was flawed. The relief awarded by the Court was remand back to the agency "which shall cause to occur an evaluation by the [Technical Evaluation Board] and a decision by the SSA on plaintiff's and defendant-intervenor's proposals in accordance with the terms of the solicitation." 75 Fed. Cl. 556. The relief was ordered 11 months after the RFP had been issued.

And in Great Lakes Dredge & Dock Co. v. United States, 60 Fed. Cl. 350 (2004), the Court ordered a remand to the agency concerning the evaluation of an existing proposal. The Court noted that "rejection of all bids after they have been opened tends to discourage competition because it results in making all bids public without award, which is contrary to the interests of the low bidder, and because rejection of all bids means that the bidders have expended manpower and money in the preparation of their bids without the possibility of acceptance." 60 Fed. Cl. 360. The same is true here, even though the instant case concerns an RFP, not an IFB. [redacted] MLM's contract award price have been exposed,

and a re-solicitation would require all bidders to again expend manpower and money in preparing another round of offers. The Court should thus grant the same relief it granted in Great Lakes enjoining the agency from "proceeding with performance of the contract with any entity other than [the protester] provided that the [agency] finds [it] to be a responsible contractor." 60 Fed. Cl. 369.

The Government's proposed corrective action of throwing out proposals and conducting a brand new re-solicitation—for a third time—and re-evaluation from scratch is unreasonable. This is over-kill, and it does not even remedy the procurement error that occurred. Conducting a re-solicitation means issuing a third solicitation, making offerors review the new solicitation and prepare a new third proposal, and requiring the agency to perform a third evaluation from scratch. The serves only to unduly delay final resolution and increase the costs of all parties – most notably, the agency's own costs. The Postal Service's proposed corrective action thus appears motivated by its expressed paranoia over the possibility that an order of reasonable corrective action might enable Plaintiff to recover attorney fees. During the telephonic oral argument on July 10, 2008, Defendant twice expressed concern that Plaintiff might become eligible to recover attorney fees under EAJA, even though Plaintiff had not raised the issue. As held by the Federal Circuit in Chapman Law Firm Co. et al. v. United States, 490 F.3d 934 (Fed. Cir. 2007), the availability of EAJA fees is not an appropriate consideration for a court in determining how to dispose of a case. The only issue before the Court should be what remedy is most reasonably and narrowly tailored to correct the procurement error that has occurred. The Government ignores the dictates of Chapman by proposing unnecessary and non-curative relief for the purpose of avoiding the possibility of EAJA entitlement.

Any other relief short of re-evaluation and award would impermissibly cause JEM Transport to incur an irreparable harm without remedy, and thus the requested relief should be granted.

## CONCLUSION

For the reasons stated above, Plaintiff, JEM Transport is entitled to judgment on the administrative record. Accordingly, JEM Transport respectfully requests that this Court grant judgment in its favor and grant Plaintiff the following relief:

1. A declaration that the contract was awarded to MLM Trucking contrary to applicable law and the Solicitation;
2. An injunction directing the Postal Service to re-evaluate MLM Trucking's and JEM Transport's proposals fairly, objectively, and in accordance with the evaluation criteria stated in the Solicitation;
3. A permanent injunction enjoining Defendant from accepting further performance of the MLM Trucking contract within 15 days after a re-evaluation of offers has been completed and a new contract awarded; and
4. Such other and further relief as the Court may deem just and proper.

Dated: July 16, 2008

Respectfully submitted,

/s/ Claude P. Goddard, Jr.
Claude P. Goddard, Jr.
**AKERMAN, SENTERFITT, WICKWIRE GAVIN**
8100 Boone Blvd., Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax

***Attorney of Record for***
***JEM Transport, Inc.***

Of Counsel:
David P. Hendel
**AKERMAN SENTERFITT WICKWIRE GAVIN**
8100 Boone Blvd., Ste. 700
Vienna, Virginia 22182
(703) 790-8750
(703) 448-1767 (Fax)