**REDACTED VERSION**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | |
|---|---|
| **JEM TRANSPORT, INC.,** Plaintiff, v. **UNITED STATES OF AMERICA,** Defendant. | **No. 08-428C** **(Judge George W. Miller)** |

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

**Dated: July 24, 2008**

Claude P. Goddard, Jr., Esq.
AKERMAN SENTERFITT WICKWIRE GAVIN
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182
(703) 790-8750
Counsel for Plaintiff

# TABLE OF CONTENTS


INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 3

STANDARD OF REVIEW .......... 4

ARGUMENT .......... 5

I. RE-EVALUATION IS NECESSARY TO PREVENT IRREPARABLE HARM .......... 6

II. THE REQUEST FOR BID AND PROPOSAL COSTS IS STILL VIABLE .......... 10

III. THE POSTAL SERVICE'S FUTURE ACTION DOES NOT MOOT THE CASE .......... 12

IV. DECLARATORY RELIEF IS NECESSARY TO PREVENT A RECURRENCE .......... 13

V. AVOIDANCE OF LIABILITY FOR ATTORNEYS' FEES IS INSUFFICIENT REASON TO FIND THE CASE MOOT .......... 16

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

## CASES

*Banknote Corp. of America v. United States*, 365 F.3d 1345 (Fed Cir. 2004) .............................. 4

*CCL Service Corp. v. United States*, 43 Fed. Cl. 680 (1999) .............................................. 10, 11

*Chapman Law Firm, et al. v. United States*, 490 F.3d 934 (Fed. Cir. 2007).......... 6, 13, 14, 16, 17

*CAN Corp. v. United States*, 81 Fed. Cl. 722 (2008)................................................................ 15

*County of Los Angeles v. Davis*, 440 U.S. 625 (1979).......................................................... 5, 13

*CW Government Travel, Inc. v. United States*, 46 Fed. Cl. 554 (2000)...................................... 10

*Emerald Coast Finest Produce Co. v. United States*, 75 Fed. Cl. 549 (2007)............................... 8

*Fina Oil & Chemical Co. v. Ewen*, 123 F.3d 1466 (Fed. Cir. 1997) ............................................ 5

*Great Lakes Dredge & Dock Co. v. United States*, 60 Fed. Cl. 350 (2004) ............................ 8, 10

*Griffy's Landscape Maintenance LLC v. United States*, 46 Fed. Cl. 257 (2000)........................... 7

*Impresa Construzioni Geom. Demonico Garufi v. United States*, 238 F.3d 1324
(Fed. Cir. 2001)......................................................................................................... 4

*Labat-Anderson, Inc.*, 65 Fed. Cl. 570 (2005) ........................................................................ 9, 15

*Parcel 49C Ltd. Partnership v. United States*, 31 F.3d 1147 (Fed. Cir. 1994).............................. 9

*Powell v. McCormack*, 395 U.S. 486 (1969) ................................................................... 5, 11, 12

*S.K.J. & Assoc., Inc. v. United States*, 67 Fed. Cl. 218 (2005)............................................. 10, 11

*Superior Helicopter LLC v. United States*, 78 Fed. Cl. 181 (2007)........................................ 6, 16

*The Centech Group, Inc. v. United States*, 78 Fed. Cl. 496 (2007) .......................................... 6, 7

*United States v. Oregon State Med Soc'y*, 343 U.S. 326 (1952).................................................. 5

**STATUTES**

Administrative Disputes Resolution Act (ADRA), 28 U.S.C. § 1491(b) ........................ 4, 5, 12

5 U.S.C. § 706(2)(A)........................................................................................................ 4

39 C.F.R. § 601.18(g) ........................................................................................................ 14

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(Bid Protest)**

| | |
|---|---|
| **JEM TRANSPORT, INC.** | |
| **Plaintiff,** | |
| **v.** | **No. 08-428C** |
| | **(Judge George W. Miller)** |
| **UNITED STATES,** | |
| **Defendant.** | |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION TO DISMISS**

Plaintiff, JEM Transport, Inc. (JEM Transport), respectfully submits its opposition to Defendant's Motion to Dismiss.

## INTRODUCTION

JEM Transport filed this action protesting the award of a Postal Service mail transportation contract to MLM Trucking Inc. (MLM Trucking). After a briefing schedule was established for resolving this case on cross motions for judgment on the administrative record, the Defendant (the Postal Service) notified the parties and the Court that it was terminating and re-soliciting the challenged contract. In light of this action, the Postal Service has argued that this case should be dismissed as moot. As shown below, however, there are still live controversies between the parties, and, as a result, the Court retains jurisdiction to decide the case on the merits and grant the full relief JEM Transport has requested. Accordingly, the Court should deny Defendant's Motion.

## FACTUAL BACKGROUND

Plaintiff has fully set forth in its Motion for Judgment on the Administrative Record the facts relating to the merits of its action. While the statement of facts contained in that submission provides full background for the Court's consideration, the facts relevant to the Court's consideration of the instant motion are relatively few.

Plaintiff, JEM Transport, filed this bid protest action challenging the award to MLM Trucking of a contract resulting from Solicitation No. 300-46-08 (the Solicitation), for highway contract route (HCR) No. 331M8 between the West Palm Beach and Miami, Florida Processing & Distribution Centers (P&DCs) for the period February 2, 2008 through March 31, 2011. The Solicitation stated that "[t]he Postal Service will award a contract to the offeror whose offer is deemed to offer the Postal Service the best value, price, and other factors as specified." AR 127. The "other factors" specified were characterized as "performance evaluation factors" and identified as schedule, equipment, supplier capability, and past performance. AR 127. The Solicitation provided that "Price factors (Section 3.1.2a) will be considered more important than performance evaluation factors." AR 127.

Nine offerors submitted offers in response to the RFP. AR 26. JEM Transport's proposed price of [redacted]. AR 26. MLM Trucking submitted the [redacted][1] AR 26. The [redacted]

[1] [redacted]. AR 432.

[redacted]. AR 286, 379-386, 417-422. [redacted]. See AR Tab 5 [redacted] By letter dated January 29, 2008, the Contracting Officer notified JEM Transport that he had selected MLM Trucking for award.

JEM Transport later filed this action, in which it has alleged that the Contracting Officer committed a series of prejudicial errors that led to the improper award decision. First, he conducted an unequal evaluation when evaluating: (1) the requirement for contingency hours; (2) the contingency amounts reflected in supplier's wages; (3) compliance with mandatory equipment requirements; (4) the financial and technical resources of offerors; and (5) the best interests of the Postal Service in accepting proposal revisions. Next, the Contracting Officer deviated from the evaluation scheme set forth in the Solicitation by using information supplied by JEM Transport on a Postal Form 7468A Cost Worksheet to evaluate JEM Transport's price. He further failed to give meaningful consideration to price, contrary to the Solicitation's express statement that price was more important than technical performance factors. Finally, he improperly downgraded JEM Transport for proposing supplier's hours at a low rate, when he acknowledged that no rate information was required and when federal minimum labor rates were inapplicable to supervisory personnel.

JEM Transport asked for various forms of relief, including (1) a declaratory judgment that the Postal Service's actions in awarding the contract to MLM Trucking were in violation of law; (b) termination of MLM Trucking's contract within 60 days; (c) an injunction requiring the Postal Service to re-evaluate JEM Transport's proposal and award consistent with the Solicitation; and (d) such other and further relief as the Court deems proper.

Without acknowledging any wrongdoing, on July 9, 2008, the Postal Service issued a letter notifying MLM Trucking that its contract "will be terminated effective **COB 12-Sep-08.**" Also in a Contract Route Service Order dated July 8, 2008, the Postal Service stated that "[e]ffective close of business 09/12/2008, this contract is terminated pursuant to the Termination for Convenience clause." No reason for the termination was provided. The Postal Service has stated its intent to re-solicit the contract. The Postal Service, however, has not identified any new requirements, or specification or route changes that would require a new procurement.

Counsel for the Government informed counsel for JEM Transport of the Postal Service's intentions regarding termination and re-solicitation by telephone on July 8, 2008, and then notified the Court of its actions in a status conference on July 11, 2008. The Government then filed its Motion to Dismiss, as directed by the Court, on July 17, 2009.

## STANDARD OF REVIEW

This Court has jurisdiction over this bid protest action pursuant to the Administrative Disputes Resolution Act (ADRA). 28 U.S.C. § 1491(b). The ADRA specifically made applicable the standards of review set forth in the Administrative Procedures Act (APA) for the Court's review of an agency's decisions in bid protest actions. *Id.*; *Banknote Corp. of America v. United States*, 365 F.3d 1345, (Fed. Cir. 2004). Under the APA standard of review, "a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Demonico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); 5 U.S.C. § 706(2)(A). To afford relief in such bid protest actions, the Court "may award any relief the court considers proper, including declaratory and injunctive

relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2).

The Defendant has moved to dismiss this case on the grounds that the Postal Service's actions in terminating the MLM Trucking contract and re-soliciting the contract render this case moot. "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 n. 7 (1969). Accordingly, this Court is empowered to grant relief only when there is "an actual controversy between the parties" to support the Court's exercise of jurisdiction. *Fina Oil & Chemical Co. v. Ewen*, 123 F.3d 1466, 1470 (Fed. Cir. 1997).

The burden of demonstrating mootness is a heavy one, however. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). "The declaratory plaintiff need only satisfy the jurisdictional requirement 'that the conflict be real and immediate, i.e., that there be a true, actual "controversy" . . . .'" *Id.* Voluntary cessation of illegal conduct does not necessarily result in mootness, unless there is no reasonable expectation that the alleged violation will recur. *Id.* Interim relief or events render a case moot only if they "completely and irrevocably eradicate[] the effects of the alleged violation." *Id.* "It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption." *United States v. Oregon State Med. Soc'y*, 343 U.S. 326, 333 (1952).

## ARGUMENT

This case is not moot. The Postal Service's putative corrective action is insufficient to remedy the procurement errors that denied JEM Transport a fair and equal evaluation. The proposed corrective action does not eradicate the effect of the Postal Service's error because it

does not redress the denial of a fair evaluation to JEM Transport. Indeed, the only relief that can adequately eradicate the effects of the Postal Service's errors is a re-evaluation of JEM Transport's offer consistent with the terms of the Solicitation. The availability of bid preparation and proposal costs as a potential remedy also means that the Court has a live controversy to resolve under applicable Supreme Court case law. Moreover, there is a very real likelihood that the Postal Service will repeat its errors a third time, particularly since it has administratively made a "final and binding" determination that its earlier actions were entirely proper. Finally, the issuance of declaratory relief will settle the legal relationship between the parties by declaring the requirement for the Postal Service to provide a fair and equal evaluation consistent with the Solicitation, notwithstanding the administrative determination to the contrary. Accordingly, the Court should find this case is not moot.

## I. RE-EVALUATION IS NECESSARY TO PREVENT IRREPARABLE HARM.

The Postal Service argues that this case is moot because it has provided some voluntary relief. In effect, in reliance upon *Chapman Law Firm Co. v. United States*, 490 F.3d 934 (Fed. Cir. 2007), it argues that any additional relief beyond that which it has voluntarily provided is futile because there is no reasonable expectation that the alleged violation will recur. The grant of injunctive relief requiring re-evaluation is not futile, however. In fact it is the only remedy that will prevent the working of irreparable harm. *See Superior Helicopter LLC v. United States*, 78 Fed. Cl. 181, 195 (2007) ("in a bid protest, 'a lost opportunity to compete on a level playing field for a contract . . . has been found sufficient to prove irreparable harm'"). Conducting a new procurement does not address the actual harm incurred—the "lost opportunity to compete on a level playing field." *See The Centech Group, Inc. v. United States*, 78 Fed. Cl. 496, 505 (2007) (determining that refusing

to address the plaintiff's challenge and forcing the plaintiff to await a new award "would deprive Plaintiff of the potential remedy it seeks—an invalidation of Amendment 3 and a declaratory judgment that the rescission of its earlier award was unwarranted and unlawful").

The appropriate injunctive relief is to require the Postal Service to re-evaluate existing proposals fairly, objectively, and in accordance with the terms of the Solicitation. There is no reason to throw out proposals and perform yet a third re-solicitation. The procurement errors that occurred are all remedied by a re-evaluation—assuming it is performed in a fair and objective manner and in accordance with the Solicitation's terms. The drastic action of a resolicitation does not remedy the harm that occurred, and introduces new hardships, such as further delay, the preparation of yet another proposal, and a brand new evaluation of offers received in response to the new solicitation. The Postal Service has not identified any reason for conducting a new procurement—there is nothing in the record suggesting that the Postal Service requires a new procurement due to route or specification changes. In the absence of such changed requirements, the intended re-solicitation is unnecessary.

The remedy of remand to the contracting officer to re-evaluate proposals is a commonly used remedy in like circumstances. For example, in *Griffy's Landscape Maintenance LLC v. United States*, 46 Fed. Cl. 257 (2000), the Court found that the agency committed procurement error by failing to ask the protester for missing insurance contact information. Instead of asking the offeror for the missing contact information, the agency awarded zero points for this factor and severely downgraded the protester's proposal. The Court found this was arbitrary and capricious behavior. The Court's remedy was to "vacate the award and direct the Army to re-evaluate Griffy's proposal consistent with this opinion, and make award." *Id.* at 6. This relief was ordered 9 months after the solicitation had been

issued. The Court did not order re-solicitation. Instead, it restored the *status quo ante*, which it clearly had the power to do.

Similarly, in *Emerald Coast Finest Produce Co. v. United States*, 75 Fed. Cl. 549 (2007), the Court ordered a re-evaluation of proposals because the agency's evaluation was flawed. The relief awarded by the Court was remanded back to the agency "which shall cause to occur an evaluation by the [Technical Evaluation Board] and a decision by the SSA on plaintiff's and defendant-intervenor's proposals in accordance with the terms of the solicitation." 75 Fed. Cl. 556. The relief was ordered 11 months after the RFP had been issued, and, again, the Court restored the *status quo ante.*

And in *Great Lakes Dredge & Dock Co. v. United States,* 60 Fed. Cl. 350 (2004), the Court ordered a remand to the agency concerning the evaluation of an existing proposal. The Court noted that "rejection of all bids after they have been opened tends to discourage competition because it results in making all bids public without award, which is contrary to the interests of the low bidder, and because rejection of all bids means that the bidders have expended manpower and money in the preparation of their bids without the possibility of acceptance." 60 Fed. Cl. 360. The same is true here, even though the instant case concerns an RFP, not an IFB. [redacted] MLM Trucking's contract award price have been exposed, and a re-solicitation would require all bidders to again expend manpower and money in preparing another round of offers. The Court should thus grant the same relief it granted in *Great Lakes* enjoining the agency from "proceeding with performance of the contract with any entity other than [the protester] provided that the [agency] finds [it] to be a responsible contractor." 60 Fed. Cl. 369.

Furthermore, the Postal Service's argument that all offerors must be re-evaluated is disingenuous. [redacted]. There is no reasonable indication that re-evaluation would alter that finding, which in any event has not been challenged by any offeror. [redacted] Again, the Postal Service has made no showing that a re-evaluation would alter that determination, and [redacted].

Indeed, there is no allegation that the Postal Service acted improperly with respect to any proposal except that of JEM Transport. The Postal Service has created a red herring by advancing the hypothetical need to provide relief to other offerors who were not alleged to be injured. The extension of relief to non-parties in the absence of any showing of harm to them is something over which this Court clearly lacks jurisdiction. This is simply a lawyer's argument in an attempt to justify the Postal Service's unwillingness to remedy the error it made. That error—the misevaluation of JEM Transport—can and should be remedied simply by providing JEM Transport the fair and equal evaluation it was denied before.

The Postal Service also makes too much of the fact that a re-evaluation likely would (and should) result in an award to JEM Transport. The Federal Circuit has explained that there is nothing wrong with ordering relief such as a re-evaluation where the likely practical effect is an award to the bid protest plaintiff. In such circumstances, the trial court's action does not directly award the contract, but "merely restores the posture of the [procurement] process before the illegal [conduct]." *Parcel 49C Ltd. Partnership v. United States*, 31 F.3d 1147, 1153 (Fed. Cir. 1994). *See also Labat-Anderson, Inc.*, 65 Fed. Cl. at 577 (an order

prohibiting the agency from converting to in-house performance until after resolicitation "would restore the procurement process to the same posture that existed before the alleged violation"); *Great Lakes Dredge & Dock Co.*, 60 Fed. Cl. at 370-371 (granting injunction prohibiting agency from proceeding with performance with any entity other than plaintiff).

The Government's proposed corrective action of throwing out proposals and conducting a brand new re-solicitation—for a third time—and re-evaluation from scratch is unreasonable. This is over-kill, and it does not even remedy the procurement error that occurred. Conducting a re-solicitation means issuing a third solicitation, making offerors review the new solicitation and prepare a new third proposal, and requiring the agency to perform a third evaluation from scratch. This serves only to unduly delay final resolution and increase the costs of all parties—most notably, the agency's own costs.

## II. THE REQUEST FOR BID & PROPOSAL COSTS IS STILL VIABLE.

The Postal Service argues that the cancellation of the procurement renders moot any claim for bid and proposal costs. This argument is wrong. JEM Transport was denied an opportunity for a fair and equal evaluation. When procurements are subsequently cancelled or re-evaluation is not possible, the courts have held that an award of bid and proposal costs is the appropriate relief. This is the only relief available if the remedy of re-evaluation is denied.

Defendant has cited a number of cases stating that this Court cannot award bid and proposal costs when corrective action through cancellation has been taken. *See*, Def.'s Motion to Dismiss at 10-13, citing *S.K.J. & Assoc., Inc. v. United States*, 67 Fed. Cl. 218 (2005); *CW Government Travel, Inc. v. United States*, 46 Fed. Cl. 554 (2000); and *CCL Service Corp. v. United States*, 43 Fed. Cl. 680 (1999). With all respect, those cases were wrongly decided.

They employ circular logic and confuse the issue of relief with issues on the merits. They reason that the relief of bid and proposal costs cannot be given unless there is a finding on the merits, but no finding on the merits can be given because the action causing the harm has been cancelled. *See, e.g., S.K.J. & Assoc.*, 67 Fed. Cl. at 227 ("there is no solicitation or contract upon which SKJ could base its claim for bid preparation and proposal costs before this court"); *CCL Service Corp.*, 43 Fed. Cl. at 690 ("[i]n light of DISA's decision to cancel the solicitation, any decision on the merits of the award would not affect plaintiffs in any respect—none of the plaintiffs will be eligible for award, as no award can be made under a canceled solicitation"). The fundamental error in these cases is that they fail to recognize that a claim for bid preparation and proposal costs keeps the controversy alive and precludes the case from being moot.

The situation here is analogous to that in *Powell v. McCormack*, 395 U.S. 486 (1969), in which the Supreme Court held that a claim for monetary relief kept a case from being moot. In that case, the Supreme Court considered Congressman Adam Clayton Powell's allegations that he was improperly excluded from the 90th Congress. The defendants argued that the suit was moot because his term had expired and he had been seated in the subsequent 91st Congress after his suit was filed. *Id.*, at 495-496. The Supreme Court refused to dismiss as moot, however, because it recognized that Congressman Powell had an extant claim for back pay. *Id.* Thus, the claim for relief was sufficient to require a finding on the merits to determine if the relief should be granted. *Id.*, at 496-497 ("[w]here one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy").

The same principles should govern here. While the Complaint did not specifically request bid and proposal costs, JEM Transport did pray for "such other and further relief as the Court deems proper." JEM Transport, by counsel, later specifically argued that it did seek bid preparation and proposal costs as such further relief. As noted above, the award of bid and proposal costs is a recognized form of relief that lies within the discretion of the Court to grant. 28 U.S.C. § 1491(b)(2). Accordingly, JEM Transport has a claim for monetary relief—just like Congressman Powell—that requires the Court to consider the merits of its case. *Powell v. McCormack*, 395 U.S. at 495-497. There is an active case or controversy and, so, the case is not moot.

## III. THE POSTAL SERVICE'S FUTURE ACTION DOES NOT MOOT THE CASE.

The Postal Service has moved to dismiss JEM Transport's Complaint on the basis that JEM Transport's bid protest "has been rendered moot in light of the Postal Service's voluntary termination of the contract . . . ." Def.'s Motion to Dismiss at 1. While the Postal Service seeks to characterize its "voluntary termination" as an accomplished fact, its papers actually show the termination is executory. It will not become effective, if at all, until September 12, 2008. See Exhibit 1 to Def.'s Motion to Dismiss (notifying MLM Trucking that its contract "will be terminated effective COB 12-Sep-08" and "[e]ffective close of business 09/12/2008, this contract is terminated").

In other words, the Postal Service has merely stated its intention to terminate MLM Trucking's contract in the future—as of September 12, 2008. This statement does not guarantee that the termination will be executed—the Postal Service is free to change its mind and nullify the termination at any time before September 12, 2008.

Under these facts, no relief has been, or will be, afforded until September 12, 2008. Thus, the Postal Service's reliance on cases finding mootness in light of actual termination is mis-placed. The Postal Service has failed to show the absence of an actual case or controversy.

## IV. DECLARATORY RELIEF IS NECESSARY TO PREVENT A RECURRENCE.

Even assuming for sake of argument that the Postal Service's executory statement of intent to terminate could be properly seen as corrective action, such termination and re-solicitation is insufficient to render this case moot. "[T]he Supreme Court has recognized an exception to the [mootness] rule when the defendant voluntarily ceases the challenged practice." *Chapman Law Firm*, 490 F.3d at 939. To overcome this exception, the Postal Service must show there "clearly is no 'reasonable expectation' that the alleged violation will recur and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id.*, at 940, quoting, *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). Here, the Postal Service has voluntarily taken corrective action, but there is a very reasonable expectation that it will repeat its improper actions in the re-solicitation. The possibility of recurrence is particularly great in light of the fact that the Postal Service's Supplier Dispute Resolution Officer (SDRO), whose decisions are "final and binding" for administrative purposes, see Def.'s Motion to Dismiss at 7, determined that the Postal Service's earlier actions in evaluating JEM Transport's proposal were proper.

JEM Transport's Complaint alleges a series of improper actions taken by the Postal Service in the course of this procurement. It alleges the Postal Service conducted an unequal evaluation; deviated from the evaluation scheme set forth in the Solicitation by using information supplied by JEM Transport on a Postal Form 7468A Cost Worksheet to evaluate JEM Transport's price; failed to give meaningful consideration to price, contrary to the

Solicitation's express statement that price was more important than technical performance factors; and improperly downgraded JEM Transport for proposing supplier's hours at rates below federal minimum labor rates that were inapplicable to supervisory personnel. These allegations must be taken as true for purposes of deciding this Rule 12(b)(6) motion. *Chapman Law Firm*, 490 F.3d at 938.

Significantly, the Postal Service has not acknowledged that any of its actions were improper. In fact, the Postal Service has confirmed that its "unilateral and voluntary action" was not the "result of any concession of liability on the part of the Postal Service." Def.'s Motion to Dismiss at 7. Moreover, as noted above, the SDRO previously considered all of JEM Transport's allegations and determined the Postal Service acted properly. As the Government itself has pointed out, the SDRO's decision is "final and binding" for administrative purposes. Def.'s Motion to Dismiss at 7; 39 C.F.R. § 601.18(g).

The final determination by the Postal Service is that its actions were consistent with law and the solicitation. In these circumstances, there is a very real likelihood that the Postal Service will simply repeat its previous course of action in evaluating any proposal JEM Transport will submit in the future on this HCR contract. Because it has not admitted there was any error, there is no reason for the Postal Service to cease applying one evaluation standard to JEM Transport, while applying different standards to other offerors. There is no reason for the Postal Service to desist using the Cost Worksheet to evaluate price. There is no reason for the Postal Service not to consider other factors more important than price despite the terms of the Solicitation, and there is no reason for the Postal Service to cease requiring JEM Transport to justify its supplier's wages on inapplicable federal minimum wage laws.

We are not, as the Postal Service contends, contemplating that the Postal Service will act in bad faith. The Postal Service may be acting in good faith, but, in the light of a "final and binding" administrative determination that the Postal Service acted properly and absent an acknowledgement that its past actions were improper, there is no basis to conclude that the Postal Service will adopt correct standards of evaluation in the next go-around.

The Postal Service has twice previously rejected JEM Transport's offer in favor of [redacted] The first time, the Ombudsman determined the award was "arbitrary" but the second time the SDRO determined the selection process was fair and reasonable. Under these circumstances, the Postal Service cannot show that there is no reasonable expectation that the same errors will occur when the Postal Service applies the same standards previously found by the SDRO to be proper. While the Postal Service may get two opportunities to get a procurement action right before a court will step in, it doesn't get three chances. *See CNA Corp. v. United States*, 81 Fed. Cl. 722, 727 (2008) (finding that requiring the submission of a new proposal before a determination on the merits would be futile because "requiring CNAC to submit a proposal before review of the contracting officer's all but certain disqualification of Dr. Friedman for the *third* time would serve no purpose. The hardship to CNAC of refusing to adjudicate the issue prior to submission of a proposal is to guarantee plaintiff certain rejection of their offer") (italics supplied).

This situation also distinguishes this case from *Labat-Anderson*, a case on which Defendant principally relies. In that case, the issuance of declaratory relief would have been academic because it would not have had any practical effect. That case involved a challenge to an agency's decision to take work back in-house when the plaintiff's contract expired. Because the contract had already expired and applicable regulations did not require the

Government to re-solicit before transferring work in-house, the Court determined that declaratory relief would not have any practical effect on the parties.

Here, to the contrary, the grant of declaratory relief would have substantial practical effect. It would correct the erroneous "final and binding" administrative determination by the Postal Service SDRO on the propriety of the Postal Service's actions. It also would provide the Postal Service with necessary guidance on the requirements to: (a) conduct an equal evaluation; (b) comply with solicitation prohibitions against using the Cost Worksheet to evaluate price; (c) give appropriate weight to price; and (d) avoid imposing minimum wage requirements on supervisory personnel. It would settle the legal relationship between the parties by having the effect of restraining the Postal Service's actions, just as in an automatic stay situation declaratory relief restrains the agency from acting inappropriately. *See Superior Helicopter*, 78 Fed. Cl. at 200. Accordingly, for these reasons, this case is not moot.

## V. AVOIDANCE OF LIABILITY FOR ATTORNEYS' FEES IS INSUFFICIENT REASON TO FIND THE CASE MOOT.

The Postal Service's proposed corrective action appears motivated by its expressed paranoia over the possibility that an order of reasonable corrective action might enable Plaintiff to recover attorney fees. Although JEM Transport has disclaimed any reliance on the availability of attorneys' fees as a basis for determining the existence of a live controversy, Defendant makes extensive arguments in its Motion to Dismiss as to its concerns that Plaintiff might become eligible to recover attorney fees under EAJA. As held by the Federal Circuit, the availability of EAJA fees is not an appropriate consideration for a court in determining how to dispose of a case. *Chapman Law Firm*, 490 F.3d at 939. The only issue before the

Court should be what remedy is most reasonably and narrowly tailored to correct the procurement error that has occurred. The Government ignores the dictates of *Chapman* by proposing unnecessary and non-curative relief for the purpose of avoiding the possibility of EAJA entitlement.

**CONCLUSION**

For the reasons stated above, this case is not moot. Plaintiff, JEM Transport is entitled to consideration of the merits of its bid protest and to relief that will eradicate the effects of the Postal Service's actions in improperly denying it a fair and equal evaluation.

Dated: July 24, 2008

Respectfully submitted,

/s/ Claude P. Goddard, Jr.
Claude P. Goddard, Jr.
**AKERMAN, SENTERFITT, WICKWIRE GAVIN**
8100 Boone Blvd., Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax

***Attorney of Record for***
***JEM Transport, Inc.***

Of Counsel:
David P. Hendel
**AKERMAN SENTERFITT WICKWIRE GAVIN**
8100 Boone Blvd., Ste. 700
Vienna, Virginia 22182
(703) 790-8750
(703) 448-1767 (Fax)